Mr. Carpenter, if you can wait for just a second and everybody can get settled. May it please the court, Kent Carpenter, appearing on behalf of Mary Reeves. Before I start, perhaps I need some instruction from the court as to whether I should deal with the motion or the substitution issue. Why don't you just tell us where things stand on the substitution issue. Has anything happened with respect to the substitution of Mrs. Reeves? Not before the VA, Your Honor. Mrs. Reeves' position is that no substitution is required because there is a pending appeal and that she is qualified to be substituted under this court's rules as appellant in this proceeding. And that if she were to go before the agency, there is no pending agency action in which she can be substituted. So what she would be required to do would be that which Congress intended to prevent, and that is to start all over again with an accrued benefit. Well, I had understood the agency's position, and I could be wrong and they'll tell me, to be that if a motion to substitute were tendered, then that issue would go away for purposes of this appeal, but maybe I'm not understanding their position. Well, I'm not the way that I understood their position, but that's entirely possible and quite candidly if that's all that's required, but I don't know how a motion to substitute… Well, I'm concerned now because I think more than a year has now passed since Mr. Reeves' passing, so I… Well, and that's the problem is that that's an accrued benefit claim, that's not a substitution. Substitution is different and you either substitute in something that's pending before the agency, which I believe is what's covered by 5121A, or you substitute in an appeal that's before this court, the Supreme Court, or the Veterans Court. When you substitute in an appeal, do you believe that it's necessary to make a motion to do that, and if so, should we construe your oral argument today to be such a motion? I thought I made a motion. Was there a separate motion? Yes, and it was granted, and then the government objected, or excuse me, I made the motion, the government objected, and the court in its order said that it could be dealt with in its brief… I had lost sight of the motion. Sorry, I thought I had it. I guess the question is whether we are in a position to do what otherwise would be done by the agency. I mean, the concern obviously is we're not in a position to make a factual finding. I mean, I have every confidence that Mrs. Reeves is who she says she is, but I can't make that finding, and the agency would normally be expected to be the entity that would at least be put in a position to make a determination as to whether the substitution is proper. With all due respect, Your Honor, there's no difference between being substituted in this context and being substituted in any other context under this rule. All that's required is a representation that you are the legal representative. The question is to whom should that representation be made? Well, under the rule it's made to this court, and I believe that this court's rule, just like the Veterans Court rules in Breedlove, control that outcome, and the court found that 5121 capital A didn't cover judicial substitution, but that consistent with this court's decisions and consistent with their view of the intent of Congress, the intent of Congress was to avoid making the widow, in this case, start all over again with an accrued benefit claim. And there is no basis, there is no procedure to be substituted in a judicial proceeding before the agency, and so I'm not quite sure what this court would do with a factual finding from them that would in any way affect proceeding with this appeal. Well, if, for example, the agency, well, I don't want to speculate. Why don't you go to the merits? We'll hear from the government on this point and it may make things clearer for us. Mrs. Reeves' position is that the Secretary's brief has not rebutted any of Mrs. Reeves' argument that the lower court misinterpreted 354B. The lower court explicitly held that Mr. Reeves' Q claim was merely a disagreement with how the evidence at the time of the April 1983 board decision was weighed and evaluated. Such a holding relies upon a misinterpretation of 354B, now 1154B. Under the correct interpretation, there is no weighing of the facts. Rather, the plain language of the statute requires that the Secretary shall resolve every reasonable doubt in favor of the veteran. The statutory direction is mandatory and not permissive. The statutory direction does not involve a weighing of the facts. Congress has told the Secretary to take that lay evidence and resolve reasonable doubt in favor of the veteran. The uncontradicted evidence before the board in 1983, both lay as well as medical, showed a linkage between the veteran's hearing disability and service. Had the board properly interpreted 354, the board would have resolved any reasonable doubts about that evidence in favor of the veteran and granted Mr. Reeves' request for revision. Now, the linkage is really the key issue, right? I mean, everybody seems to agree that 354 slash 1154B applies to the question of the initial service connection, the existence of a trauma in service. Incurrence. Incurrence, yes, exactly. Everybody also seems to agree that as of the time of his death, Mr. Reeves had this condition that the question is nexus, right? And the Davidson case, I believe I have the name right, Davidson case, seems to say that, well, as to that issue, 354 slash 1154 does not apply. It applies to the question of whether there was an incurrence, but not the nexus question. That is absolutely correct, Your Honor, but that's why the Veterans Court relied upon a misinterpretation in this case of the statute. The court saw this as a weighing issue. Once incurrence is established, and I believe that there isn't any question that incurrence was established factually, undebatably, at the time of the board's 1983 decision. Once that was established, the subsequent directive of the statute to the secretary is, you resolve reasonable doubt in favor of the veteran. Reasonable doubt as to what, though? As to causation, because you've already established incurrence. That reasonable doubt resolution has to go to the remaining element, because you have succeeded by showing that he was in combat, that there was an incurrence of the incident, if you will, the acoustic trauma in this case, that produced the resulting disability. But isn't all of this going to depend a lot on the relationship between the incurrence, or the natural relationship between incurrence and the ultimate condition? And let me give you a couple of examples that seem to me perhaps at opposite ends of a spectrum. If you lose a hand in the service, it's not going to grow back. So if your ultimate condition down the line is that you're missing a hand, we know there's a nexus. That doesn't have to be inquired into. On the other hand, if you have pneumonia in the service, and 30 years later you have a lung condition, and you say that lung condition is tied to my pneumonia, you can prove absolutely that you have a lung condition, that you had pneumonia in the service, but it's quite a bit more difficult, perhaps, to prove that there's a relationship, an excess. So the question is, in this case, is this a case that's more like the hand or more like the pneumonia? Do you have a burden, a factual burden, to establish that the incident that occurred in the service is connected to his condition as of 1983? And you do have that burden. Absolutely. And how do you... And it operates under the parameters of the statute. The statute establishes incurrence, and then it directs in the plain language of the statute that the secretary shall resolve reasonable doubt as to all issues... Including nexus? Including nexus. Well, that's what Davidson said, that the statute didn't apply to. Nexus. The statute doesn't give you nexus, but it applies to the evidence that you have submitted in relationship to nexus. And what was missing in Davidson was evidence of nexus. What is present in this case was evidence of causal relationship and connection. That's okay. I just wanted to ask you a somewhat related question. It seems to me that one of the differences between Davidson and the case that's present is, in this case, your allegation is he suffered hearing loss during service, which has continued to this day, possibly gotten worse over time, but it's all just one thing. Correct. In Davidson, what the court was looking at was whether or not an anxiety condition he had in service could be the cause for a later, almost second condition, i.e., the committing of suicide many, many years after. And I guess I'm wondering if maybe it's your view that 1154, when you're talking about only one condition that is acknowledged... I mean, the government, as I understood it, admitted acoustic trauma. Is that right? Well, I have to try and figure out what that was. So I went to the NIH website looking for a definition of acoustic trauma, and it's defined as hearing loss. And here's the best part. Causes are incidents and risk factors. And the three top causes for acoustic trauma, i.e., hearing loss, are an explosion near the ear, gunshot, or long-term exposure to loud noises. And I thought, well, it seems like... I mean, maybe I'm wrong, but it seems like that's your case. Is that your case? But we still have the problem of whether... Your contention is that the statute, 1154, applies to not only incurrence, but also nexus, if I understand your position. No, Your Honor. That overstates my position. My position is that in this case, there was evidence of nexus, which under the terms of 354B, once incurrence was required, that the lay testimony of Mr. Reeves was required to be accepted and resolved favorably to him unless there was clear and convincing evidence to the contrary that was inconsistent with the nature of his service. And as Judge Moore points out, that's just the opposite of the factual circumstance here. It's not a question of does that give him the nexus requirement. It doesn't. He has to present something. This Court has held that his lay testimony about being a combat veteran can't trigger the presumption. The presumption's been triggered here. There can be no debate that this man was in combat. As a result of that, the rest of his lay testimony under the plain language of 354.3, now 1154B, requires the Secretary to resolve reasonable doubt in favor of the veteran. That is not a fact-weighing process, and that's where the error was by the Veterans Court. That is a following of the direction based upon the shifting of the burden to the VA to rebut the presumption that the lay evidence that supported it is sufficient to establish entitlement to compensation. But that presumption, you say, flowing from 1154, applies to the nexus issue. When there is evidence to support it, not just to the nexus evidence as though it were in the ether. This was a claim of clear and unmistakable error in which there was clear evidence, both from the veteran and from other service members, about the nature, circumstances, and hardships of his service, i.e., were there loud noises that caused the acoustic trauma that impaired his hearing? That lay evidence in combination with the statute. The statute sets it up for the occurrence. It gives him the occurrence. He doesn't have to prove the occurrence. There's no doubt on that score. But what Congress said thereafter was, then the Secretary shall resolve every reasonable doubt in favor of the veteran. But every reasonable doubt as to what? There's nothing left, Your Honor, except nexus. I mean, the elements are that he's a veteran, that he has a current disability, and that that disability was incurred during service. The incurrence element is created by the first part of 354B by establishing that he was a combat veteran. Once that's established, then the Secretary is directed by Congress to resolve reasonable doubt on every issue in favor of the veteran. Can I ask an undoubtedly dumb question? Unlikely in this area of law so far, Your Honor. Once you have evidence of service incurrence, of hearing loss, an acknowledgement of acoustic trauma during service, I don't understand why that's not the end. Why do we need to establish nexus? What I'm not following is, is there a need for nexus still? We have an admission by the government that he suffered an acoustic trauma, and hearing loss is acoustic trauma. It's almost as though the government is treating it as two different things, like Judge Bryson's flu and later permanent lung condition that resulted from the flu. I'm not sure how to answer that because of the emphasis that this Court, particularly in Shedden, put on the difference in the presumption under 105A for incurrence versus the type of emphasis that could be equally applied under 354B when the only thing you get under the combat statute is a lessening of the evidentiary standard based upon an establishment of incurrence as a combat veteran. So this Court has interpreted repeatedly this statute as being not necessarily a presumption, but a lessening of the standard. And that standard is not for the incurrence. The incurrence is established by the nature of the fact that he was in combat. And if he says he was in combat, or excuse me, if he says he was injured in combat, then the statute requires the Secretary to accept that. And that further, the statute requires him then, or excuse me, the Secretary then, to accept his statement that my current disability is related and has been ongoing since I had that acoustic trauma. Now let's assume for a moment that we don't accept your legal contention that the Nexus relationship is dictated by 1154 plus some evidence of Nexus. And instead, this is a Q case, so the finding that was made by the Board in 83 and subsequently reaffirmed, as I understand it, by the Board in 2008, is that the findings of hearing loss were starting at 61, or 62, then 71, then 81, were too remote from the incident to be causally established, to be causally related. Now one may be very skeptical about whether that's right or not, and in fact, he was later awarded service connection, so seemingly the VA decided they were wrong about that, or at least the new evidence persuaded them to take another view. But under Q, how would you challenge that factual finding, which was made initially in 83 and then reaffirmed in 2008? And that's the question of the operation of the statute. What does the statute do? I'm suggesting that you leave the statute aside for the moment. Can you successfully win this case if we were to conclude, let's say, that the statute has nothing to do with Nexus? I know that's not your position, but suppose we were to say that. Can you win this case on the ground that the factual finding that was made in 1983 is just preposterous, arbitrary, capricious, insupportable? I mean this particular case. This case at this time? No. Because this case is predicated upon the interpretation made of 354B by the Veterans Court. That interpretation, if rejected by this court, as you have suggested, that torpedoes Mr. Reeves's pending Q claim and precludes Mrs. Reeves from raising that issue hereafter. Do we have a right to review an absurd fact-finding in a Q claim, or is that out of bounds for us under our jurisdiction? I'm not aware of any case law that has addressed that in the underlying or the seminal Q case from the Veterans Court. Russell, they talk about whether the correct facts, as known, were before the board. So I believe that this court, under your rule of law jurisdiction, could go in that direction, if I'm responding to your question, because that is one of the elements of establishing that there was a clear and unmistakable error. Well, we've held you over time here. Let's hear from the government, but we'll restore a minute or so of your time for rebuttal. Thank you. May it please the Court. I'd like to first address the substitution issue. With respect to that issue, I think Judge Bryson alluded to the fact that because Mr. Reeves passed away on February 18, 2011, the time within which to file an accrued benefits claim has now expired. Therefore, the government's position continues to be that Mrs. Reeves does not have standing to maintain her claim before this court. She lacks standing because Rule 43 does not entitle a decedent of state or survivor to substitution. Instead, the court must analyze the standing of the person seeking to substitute, and the manner in which you do that is to determine whether the applicable substantive law allows the action to survive the party's death. This court has ruled over and over again that in order for a claim to survive a party's death, because it does terminate upon death pursuant to statute, an accrued benefits claim must be filed. Mrs. Reeves can't step into Mr. Reeves' shoes and claim an entitlement to benefits going forward. She can only get those benefits that were due and payable at the time of his death. I think everybody agrees with that. So the question is what are the mechanisms for doing that? Correct. Let's set aside for a moment the fact that Mr. Reeves' death occurred more than a year ago. Did I misunderstand your brief that you were prepared to allow her to continue to pursue her accrued benefits claim in this court if an application were made for substitution? You understood our brief correctly, Your Honor. Our position is… Up until February 18, 2012, or whatever the date was. If she had filed an accrued benefits claim, then she could have stepped into Mr. Reeves' shoes for purposes of concluding this litigation and getting a decision on whether or not… Without having to start over. Exactly. And that's based on your reading and the CABC's reading of Read Love? Exactly. And it's the VA's position in light of the spirit of Section 5121A, which of course doesn't apply to this court, but has acknowledged where the statute or Congress had not acknowledged in the past that if at the secretary level a survivor files either a substitution claim or an accrued benefits claim, then they don't have to start the process over. They can step right into the shoes. Well, I understand your argument on 5121A. I guess I'm wondering why we're still worried about it. Maybe there's some reason you'll explain it to me. But in light of our federal rule of appellate procedure 43A.1, which allows for substitution of a personal representative on motion with the court, if we made that motion here to this court, why isn't she just in? I mean, why are we worried about… Why is there any need to even decide the interpretation of 5121A any longer once that motion has been made? First of all, Rule 43A technically also applies to a deceased estate. An estate does not have standing to substitute onto a deceased veteran's claim. So that's why the standing determination still needs to be made. But there are other reasons as well. But it's not contested in this case, right? In this case, it's not contested. All right. So Judge Moore's question is applicable to this case and not to a case involving an estate or a great-grandchild or a third nephew twice removed. Why shouldn't we simply say under the authority of our rule that she's substituted? End of discussion. Nobody is really disagreeing that she's entitled to be substituted. Well, I mean, there are several reasons. First, to the extent that she's just substituted, there remains somewhat of a bit of uncertainty about, well, what has she substituted for? She doesn't have an accrued benefit. Accrued benefit. She hasn't filed an accrued benefits claim, so then is she substituted to somehow entitling herself to Mr. Reeve's benefits going forward? If Mr. Reeve had continued the case, then he would not have just been entitled to benefits due and payable up until his death, obviously. It would have been going forward. Sure, but I don't think anybody is arguing, at least I don't understand Ms. Carpenter's argument, that she's entitled to benefits going forward. Ms. Carpenter's argument, as I understand it, is that she would like the accrued benefits going back to 1980, I guess, 1, when she applied. That's correct, but Congress has set up a statutory scheme that applies to veterans' benefits. Under the statutory scheme, once the veteran dies, his entitlement to benefits ends. At that point, the survivor is required by either 5121 or 5121A to file a claim with the VA. There's been no claim filed with the VA here. As the court indicated earlier, I know this is an easy case, but there could be more difficult cases. What if there were two Mrs. Reeves who came in? I understand. Another thing to keep in mind is if this court makes decisions as to who is an eligible accrued benefits beneficiary, then there would be no right to appeal. Let's just say that there were two Mrs. Reeves and they came in and they both wanted to substitute and the court decided, well, Mrs. Reeves, number one, is an eligible accrued benefits claim. Mrs. Reeves, number two, isn't. If the decision is made at the VA, then that decision can be appealed to the board. If the decision is made here, I guess the only relief would be a motion for reconsideration, a petition for hearing. In the interest of administrative efficiency and judicial efficiency and economy, it's best if the claim is made to the VA. Otherwise, the court becomes somewhat of an arm of the VA in deciding the issue. Well, that makes total sense in every case, except kind of here, where in terms of judicial economy and efficiency argument, the least sensible judicial economy thing would be for us to use 5121A as a means for sending this back, right? Because that just causes further proceedings where she has to get properly substituted before the secretary. Well, she'd be out of luck. No, here she'd be out of luck. She'd be time-barred altogether. All we're asking is that the individual file an accrued benefits claim at the VA, and the VA would even entertain a claim for substitution there. But we have to remember that we're completing substitution at the VA with substitution at the court. How does this differ from the Henderson case? In Henderson, if I remember correctly, and I read the motion for substitution there, Mrs. Henderson represented to the court that she would timely file a claim for accrued benefits. That was the condition upon the government's consent to the substitution, and that's what's happened in all the cases that have come before us now. For instance, I think it was the Rivera-Ortiz case. There, all the survivor had to do was file a claim for accrued benefits. That was all we were asking for here. If Mrs. Reeves had done that, then she would be able to step into the shoes of Mr. Reeves for pursuing her accrued benefits claim by getting a decision to this court and not having to go back and start all over. Well, why don't we turn to the merits? Okay. On the merits, Appellant's counsel admitted that if his interpretation or his claim that the board misinterpreted Section 354B in 1983 is incorrect, then the government wins this case. You may have reconsidered that after Judge Moore raised the question of whether there was any room for challenging the factual predicate for the 1983 board decision. Well, I mean, because this is an acute case, there is no room for challenging the factual predicate of the board's decision in 1983. The court can only review the interpretation of the statute at that time, and it's confined to the record at that time. Was the statute different at that time? The only difference was that they used the term administrator versus secretary, so it was virtually identical. And at the time, separate and apart from Section 354B, the board acknowledged that Mr. Reeves had suffered an injury in service. Therefore, resorting to Section 354B, which provides a relaxed standard, was not necessary. What was the injury that you acknowledged that he suffered in service? Acoustic trauma. Is that the same thing as hearing loss? Are they one and the same? I heard what you're on about. Is there any other definition for it? I could find no definition other than hearing loss. The definition of trauma is an injury to the body or flesh. Whether acoustic trauma assumes hearing loss, I'm not willing to concede to. I'm not sure about that. And we have to remember, this is back in 1983. There was clearly an injury having to do with Mr. Reeves' ear. That's clear. But at the time, the board considered both the lay testimony of Mr. Reeves and his wife, as well as medical testimony that Mr. Reeves had submitted, and decided that the disability was too remote from the injury, and they are separate standards. We were talking about disability being too remote. Aren't we really asking the question of whether this was temporary hearing loss or permanent hearing loss? If it was permanent hearing loss, then he's like the fellow who's missing the hand. It's not coming back, and therefore, you're done. Nexus is finished. If it's temporary hearing loss, I understand that there could be people who recover from rock concerts that they sat through when they were teenagers, and they get some considerable degree of their hearing back. If that's so, then it may be a different story. You could say, well, he got older, and his hearing began to go away. I'm not sure that a fair review of the facts of this case without having the cue setting would necessarily lead one to that conclusion, but isn't that really the issue here? Permanent versus temporary? But what that requires is some sort of re-evaluation of the evidence at the time. In 1983, the board found that the disability or that hearing loss was too remote, so clearly the board did not think that Mr. Reeves had incurred a permanent hearing loss in 1945 when he was incurring mortar fire in World War II. Or is it that the board at that time didn't apply the statute, a matter of law? No, the board applied the statute. There's no evidence against him. It's just that they're saying it was too remote. That's not giving the benefit of all reasonable doubt to the fact that... Your Honor, Section 354B... Which turns out to have been wrong anyway. Section 354B applied only in determining whether he had incurred an injury in service. It did not speak to the third element of the burden of proof for determining whether... Wait a minute, counsel. It says the secretary shall accept as sufficient proof of service connection. Sufficient proof of service connection, not sufficient proof of one element of service connection. This court in Davidson, Your Honor, respectfully disagreed with what you're saying. It said you have to look at the whole statute. Well, wait. The court in Davidson disagreed when the injury was not the same injury that occurred during service. They disagreed when it was a secondary injury that was claimed to have been caused by the primary injury. The court there acknowledged an anxiety disorder, and then the guy committed suicide later. And the very quote is about the nexus between that disease, the anxiety disorder, and the ultimate death. That's the quote in Davidson. The nexus they were looking at wasn't between service connection and death, but between whether or not the injury suffered during service connection could have caused the ultimate death. I think it's a different nexus. It's not a different nexus. The question is whether the injury in service caused the disability that was first detected in 1962. That was sense only. Well, you say first detected in 1962, but the statute says you've got to accept lay evidence, and his lay evidence is that he had hearing loss in service. But that was lay evidence that he was injured in service. It's not lay evidence that he was disabled in service. He had hearing loss. Hearing loss is what you admitted to, acoustic trauma. But the hearing loss that we don't know what his hearing loss was in service. We only know that his ear was injured in some way by mortar fire. No, not just that his ear was injured, but his ear was injured and resulted in hearing loss. The only evidence of record is his lay evidence. And under 1154, 354… He also had a medical opinion. But the board found no connection between that. The court, with due respect, the court is assuming that he had hearing loss when he undertook the acoustic trauma. The problem for the board in 1983… No, no, we're not assuming that his testimony is that he had hearing loss in service. That's lay evidence under 1154. There is no contrary lay evidence. The lay evidence established that he had an injury in service. Hearing loss was the injury he described. But then, between then and 1962, it was not, there was no evidence showing that the level of hearing loss and the degree of injury that he was claiming was based on the injury law of the, I'm sorry, the acoustic trauma he incurred in service. We really need to get back to the permanent, temporary, right? Isn't that really what it all comes down to? Your Honor, I think it does have to come down to that. In 1983, the board found that any acoustic trauma, whether you want to call it acoustic trauma or temporary hearing effect, it couldn't determine that that caused the sensorineural hearing loss that he was, the disability diagnosed in the 60s. That's, under Davidson, that's the third element. You must show a causal connection between the disability and the injury. And neither Davidson nor any other case has said that if they're similar type afflictions that you automatically establish nexus. There's no basis for such a conclusion or such a rule. But what his allegation is, it's the same thing, not similar, it's the same thing. It never changed. The amount of hearing loss that I suffered in service is identical to the amount I have today. I don't think that's what he's saying. I think what he's saying is he started to notice some hearing loss in 46, 47. His wife said, I started to seem like he was having some hearing loss. There was never an allegation that the amount of hearing loss that was ultimately diagnosed was the exact same hearing loss which he thought he had in service. I'd like to address the substitution question first. In relation to the substitution question, it's very frustrating for advocates to hear the VA come before this court and talk about if the veteran or survivor would have only filed an accrued benefit application. When Congress enacted 5121A, it directed the Secretary to promulgate regulations. We still don't have those regulations. The National Organization of Veterans Advocates filed suit in this court to compel them to do it. They said they'd do it. We still don't have those regulations. But the problem is, Your Honor, is that what 5121A says is not what the government said or is insisting upon as a prerequisite to substitution. 5121A says that the representation that the claim dies with the veteran no longer exists. They get up here and tell you with a straight face that that's the case. Congress did away with that. And this court in Phillips recognized that.  And as a consequence, substitution is available so that a qualified survivor will receive as accrued benefits the benefits, if any, that are payable with the pending appeal. That all may be true, or it may not. But the government said in its brief, and I thought I had recalled it correctly, and I'm sure you read it, it said that if Mr. Misery's representation of the court that she has filed or intends to timely file an application for accrued benefits, we would withdraw our argument that the case should be dismissed. I would have thought, upon reading that, you would have covered your bases by walking across Vermont Avenue and filing a piece of paper. What would have been the downside to doing that? That they would have started a new claim. I don't think that... That's not what I understand. But, Your Honor, I'm sorry. That is an administrative proceeding that has nothing whatsoever to do with this judicial proceeding. And what the VA is trying to do is to control this court's docket by saying we have some sort of special expertise to make these decisions. These qualifying survivors are set out by statute in 5121a. You either are or are not a surviving spouse, a dependent child, or a parent. But what do we do if we have somebody that comes up and there is a question as to whether that's the real Mrs. Reeves? And you file a motion for substitution. Then the second Mrs. Reeves can come in and file a contested motion. And if the court decides that you can't make that determination, then one or the other of them, or both of them, are going to have to go back to the VA and file a claim. But that was not the intent of Congress as recognized by this court in Phillips. This court in Phillips said there's no longer a problem. Substitution will take place as a matter of course. The VA is now... That certainly deals with the problem of having to start over. The question is, mechanically, how is the substitution to be effected? Now, I understand... But respectfully, Your Honor, that's just not an issue for this court. The issue for this court is, has Mrs. Reeves complied with 43a? And Mrs. Reeves has. And she should be substituted. The government's come forward with no reason why she shouldn't be substituted. Okay. On the merits, quickly. You don't want to speak to the merits? This court has said that 1154B, formerly 354B, is a relaxation of the evidentiary standard. This court has said it is not a relaxation so that the veteran's lay testimony can be used to establish whether they are or are not in combat. So it can't be used to prove combat. So what can it be used for? That's the question in this case. Is it limited to incurrence only, or is it limited to proof of that necessary nexus between the injury and the resulting disability? And I disagree respectfully, Your Honor, with the notion that this is permanent versus temporary. This is a matter of same versus different. Is it the same injury and the same resulting disability that happened during service as is the same disability that is post-service? And there is no other resulting disability from acoustic trauma than hearing loss. Well, but you can have the same type of disability which isn't the same disability, and that's my point about the distinction between permanent and temporary. I mean, I could have hearing loss back when I was a teenager from the rock concerts, and I could have hearing loss now by virtue of the progression of age, and they would be the same in the sense that they are the same condition, but they would have no necessary relationship. But there are two problems with that analysis. First, this is the statute. We are talking about what this statute does or doesn't do in terms of lessening that evidentiary standard for the benefit of the combat veteran. This is distinguishable from the non-combat veteran. However, this court in Buchanan and in Jandreau has specifically said that lay evidence is competent evidence unless there is evidence, including evidence of causal relationship, unless this is something beyond the experience to be able to be observed by the veteran. The veteran observed loud noises. The veteran then observed he had a decrease in hearing. Those were all observable events, and as Judge Moore correctly pointed out, the only evidence of record was the lay evidence that was uncontradicted. Okay, I think we'd better leave it there. We thank both counsel. The case is submitted.